

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00661-CR

Jesus **CARDOSO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 12, Bexar County, Texas
Trial Court No. 408262
Honorable Scott Roberts, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  July 2, 2014

AFFIRMED

A jury convicted appellant, Jesus Cardoso, of ten counts of cruelty to animals.  In two issues on appeal, appellant asserts (1) the trial court erred by denying his motion to suppress, and (2) his right to a unanimous verdict was violated.  We affirm.

### BACKGROUND

On October 20, 2009, Officer Mark Rhodis, a police officer with the City of San Antonio Housing and Neighborhood Services Department, submitted a request for a search warrant to

investigate reported fire, health, and/or code violations of a building owned by appellant. In support of his request, Officer Rhodis submitted an affidavit that stated:

> . . . I have good reason to believe that serious violations of State Law, Health and Safety code are occurring at 1421, 1423, 1425 N. Zarzamora St. . . . which is located within the city limits of the City of San Antonio, Texas. Owner is Jesus Cardoso aka Jesus Mercado, 1425 N. Zarzamora St., San Antonio, Texas per Bexar County Appraisal District.
>
> I have personally conducted research on the location and found an extensive history of calls for service by police and code compliance. Fifty-eight (58) calls for police in 2009, and one hundred twenty-two (122) calls [for] code compliance. Officer Mark Rodriguez has had numerous complaints at [the] address for animal sacrifice[s]. He has observed rotting carcasses on the premises, which also houses a bakery. The property is a concern [and health hazard] to neighboring residents, and a hazard to public health and safety. Therefore, an on-sight inspection of the entire property, including all structures is required to make an accurate assessment.
>
> A search warrant is hereby requested to be issued authorizing a Texas Peace Officer and required City Staff to enter the premises for the purpose of assessing the interior/exterior structural integrity and unsanitary conditions, any and all Health and Safety Code violations and/or unsafe building conditions pursuant to the authority granted in Section 18.05 of the Texas Code of Criminal Procedure.

The magistrate approved the issuance of the search warrant, and a search of the premises uncovered one dog chained to an exterior post surrounded by debris and feces, and nine turtles inside the premises. Larger turtles were found inside barrels and smaller turtles were found inside buckets, both sets living in unsanitary conditions, including the remains of dead turtles found at the bottom of these containers.

As a result of these discoveries, appellant was subsequently charged by information with ten counts of cruelty to non-livestock animals—one count of confining a dog in a cruel manner and nine counts of unreasonably failing to provide necessary food, water, care, or shelter for the turtles. During the trial, appellant re-urged a pre-trial motion to suppress all evidence seized in connection with his case, arguing the affidavit was insufficient to support a finding of probable

cause. After a hearing, the trial court denied his motion to suppress, and the jury convicted appellant on all ten counts.

## MOTION TO SUPPRESS

In his first issue, appellant asserts the trial court erred by denying his motion to suppress because the affidavit filed in support of the search warrant lacked substantial facts to establish probable cause. Specifically, appellant argues the affidavit "makes no reference to a fire or unsafe building and fails to specifically identify a health hazard or a violation of a health or building regulation, statute or ordinance." He also contends the affidavit failed to establish the alleged health, safety, or code violations "exist[ed] *at or near the time* that the affidavit [was] prepared and the warrant sought."

### 1. Standard of Review[1]

When reviewing a trial court's ruling on a motion to suppress, we generally apply a bifurcated standard, giving almost total deference to a trial court's determination of historic facts that are supported by the record, and apply a de novo standard to the trial court's application of the law to the facts. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). However, when the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations and the trial court is constrained to the four corners of the affidavit. *Id.* Thus, when reviewing a magistrate's decision to issue a search warrant, we apply a "highly deferential standard" because of the constitutional preference for searches to be conducted pursuant to a warrant. *Id.* After reviewing the supporting affidavit in a "commonsensical and realistic manner," we must uphold the magistrate's decision so long as the magistrate had a

---

[1] This case involves the issuance of a search warrant authorizing the inspection of a specified premises to search for fire, health, or code violations pursuant to article 18.05 of the Code of Criminal Procedure. We apply the same standard of review used when analyzing the sufficiency of an affidavit to support probable cause.

substantial basis for concluding that probable cause existed based on the four corners of the affidavit and reasonable inferences therefrom. *Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012); *McLain*, 337 S.W.3d at 271. "This substantial basis standard of review does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review." *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (internal quotations omitted).

## 2. Analysis

The search warrant in this case was issued pursuant to article 18.05 of the Texas Code of Criminal Procedure, which allows for the inspection of specified premises to search for suspected fire, health, or code violations. It provides:

(a) . . . [A] search warrant may be issued . . . for the purpose of allowing the inspection of any specified premises to determine the presence of a fire or health hazard or unsafe building condition or a violation of any fire, health, or building regulation, statute, or ordinance.

(b) A search warrant may not be issued under this article except upon the presentation of evidence of probable cause to believe that a fire or health hazard or violation or unsafe building condition is present in the premises sought to be inspected.

(c) In determining probable cause, the magistrate is not limited to evidence of specific knowledge, but may consider any of the following: (1) the age and general condition of the premises; (2) previous violations or hazards found present in the premises; (3) the type of premises; (4) the purpose for which the premises are used; and (5) the presence of hazards or violations in and the general condition of premises near the premises sought to be inspected.

. . . .

TEX. CODE CRIM. PROC. ANN. art. 18.05(a), (b), (c) (West Supp. 2014).

On appeal, appellant asserts the affidavit is flawed because Officer Rhodis only listed the number of police and code compliance calls made and failed to provide any details about the calls,

such as whether the calls described any fire, health, or code hazards; whether the calls were investigated and resulted in violations; and whether the concerns had been abated. He argues that in order to show the substantial facts necessary to establish probable cause, the affidavit must be supported by the factors listed in article 18.05(c).

Article 18.05 does not *require* the factors in subsection (c) to be included in the supporting affidavit. Rather, it provides that the magistrate is not limited to evidence of specific knowledge, but *may* also consider the factors in determining probable cause. In this case, Officer Rhodis's personal knowledge was limited to the complaint history of the property. However, because the search warrant request was made pursuant to article 18.05, the magistrate was allowed to consider the additional factors listed in subsection (c). The affidavit did not list the age of the property, but it outlined the concerns regarding the general condition of the premises. Additionally, the affidavit stated the premises were being used as a bakery and Officer Rodriguez had received numerous complaints that animal sacrifices were being conducted on the premises in addition to Officer Rodriguez's observation of rotting carcasses—both serious concerns for potential health code violations. Accordingly, we conclude the affidavit contained sufficient facts to establish a substantial basis for determining probable cause that fire, health, or code violations would be found on the premises to be searched.

Appellant also challenges the affidavit with respect to time. He argues Officer Rhodis failed to explain why he believed the alleged violation existed "*at or near the time* that the affidavit was prepared and the warrant sought," and Officer Rodriguez's observations were "devoid of any date or time when [he] received the complaints of animal sacrifices or when he observed rotting carcasses."

Generally, "[t]he facts stated in a search affidavit 'must be so closely related to the time of the issuance of the warrant that a finding of probable cause is justified.'" *McLain*, 337 S.W.3d at

272 (quoting *Flores v. State*, 827 S.W.2d 416, 418 (Tex. Crim. App.—Corpus Christi 1992, pet. ref'd)); *see also Sherlock v. State*, 632 S.W.2d 604, 608 (Tex. Crim. App. 1982) (stating affidavit "inadequate if it fails to disclose facts which would enable the magistrate to ascertain from the affidavit that the event which the probable cause was founded was not so remote as to render it ineffective"). "But imprecision with respect to time is not by itself fatal; it becomes fatal when a court cannot ascertain whether or not the information is stale." *Jones*, 364 S.W.3d at 861. The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of activity involved, the time that has elapsed between the occurrence of the events set out in the affidavit and the time the search warrant was issued. *Steele v. State*, 355 S.W.3d 746, 750 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). "However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant," and "in appropriate circumstances, years could pass without information becoming stale." *Jones*, 364 S.W.3d at 861; *see Kennedy v. State*, 338 S.W.3d 84, 93 (Tex. App—Austin 2011, no pet.). Determining whether the information is stale should also involve consideration of the type of property to be searched and the probability that the property may have been relocated. *Kennedy*, 338 S.W.3d at 93.

Although the affidavit did not include specific dates or times when the complaints were made, the information contained in the affidavit was sufficient to permit the magistrate to infer a definite outer time limit for when the events giving rise to probable cause occurred. *See Jones*, 364 S.W.3d at 862 (explaining magistrate able to infer outer limit for time). The affidavit stated the complaints were made in 2009, and the search warrant was issued October 20, 2009. Therefore, a maximum of 292 days had elapsed. The complaint history of the property included a total of 180 complaints made in 2009. The magistrate could have inferred that 180 complaints made to the police and code compliance in 2009 was sufficient to demonstrate an ongoing, continuous

course of complaints regarding the general condition of the premises. Consequently, the fact that the affidavit lacked specific dates or times was not fatal to the magistrate's finding of probable cause because the passage of time was less significant under these circumstances. *See id.* ("If twenty-three months could elapse before securing a warrant for [an ongoing and continuous] drug operation . . . without causing the information to become stale, it seems unlikely that a gap of ten months should pose a staleness problem in the present case.") (citing *United States v. Greene*, 250 F.3d 471, 480–81 (6th Cir. 2001)). Finally, considering the type of property to be searched was a building, the probability that the property would have been relocated was non-existent further supports that the passage of time in these circumstances was not fatal to the magistrate's probable cause determination.

Employing a highly deferential standard and deferring to the reasonable inferences the magistrate could have made based on the four corners of the affidavit, we conclude the magistrate had a substantial basis for determining probable cause that fire, health, or code violations existed at the time the search warrant was issued, and that such violations would be found on the premises. Accordingly, we uphold the magistrate's probable cause determination.

## JURY CHARGE

In his second issue, appellant contends the trial court erred by permitting a non-unanimous verdict. Specifically, he argues the court's jury charge set out four separate and distinguishable offenses: (1) cruelty to animals by unreasonably failing to provide food, (2) cruelty to animals by unreasonably failing to provide water, (3) cruelty to animals by unreasonably failing to provide care, and (4) cruelty to animals by unreasonably failing to provide shelter. Under this charge, appellant argues some jurors could have found him guilty of unreasonably failing to provide food while others could have found him guilty of unreasonably failing to provide water, unreasonably failing to provide shelter, or unreasonably failing to provide care; thereby permitting the jury to

convict him on less than a unanimous verdict. The State responds that the jury charge appropriately allowed the jury to consider alternate means of carrying out the same offense.

## 1. Standard of Review

In analyzing a jury charge issue, our first step is to determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error is found, we must then determine whether the defendant suffered sufficient harm to require reversal. *Id*.

## 2. Analysis

A jury in a criminal case must reach a unanimous verdict. TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. art. 36.29(a); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). There are three general categories of offenses: (1) "result of conduct" offenses, (2) "nature of conduct" offenses, and (3) "circumstances of conduct" offenses. *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). Cruelty to animals is categorized as a "nature of conduct" offense. *See Amaya v. State*, 733 S.W.2d 168, 174 (Tex. Crim. App. 1986). "With 'nature of conduct' [offenses], each juror must be unanimous about the specific criminal act. . . ." *Young*, 341 S.W.3d at 424. However, the jury is not required to unanimously find that the defendant committed that specific criminal act by a specific manner or means. *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008). "'Manner or means' describes *how* the defendant committed the specific statutory criminal act." *Ngo*, 175 S.W.3d at 745–46 (emphasis in original). The State is permitted to plead alternate manner or means of committing the same offense. *Landrian*, 268 S.W.3d at 535–36.

A person commits the offense of cruelty to non-livestock animals if the person intentionally, knowingly, or recklessly:

(1) tortures an animal or in a cruel manner kills or causes serious bodily injury to an animal;

(2) without the owner's effective consent, kills, administers poison to, or causes serious bodily injury to an animal;
(3) fails unreasonably to provide necessary food, water, care, or shelter for an animal in the person's custody;
(4) abandons unreasonably an animal in the person's custody;
(5) transports or confines an animal in a cruel manner;
(6) without the owner's effective consent, causes bodily injury to an animal;
(7) causes one animal to fight with another animal, if either animal is not a dog;
(8) uses a live animal as a lure in dog race training or in dog coursing on a racetrack; or
(9) seriously overworks an animal.

TEX. PENAL CODE ANN. § 42.092 (West 2011). Accordingly, the trial court instructed the jury as follows:

Count II

Now, if you find from the evidence beyond a reasonable doubt that on or about the 21st day of October, 2009, in Bexar County, Texas, the defendant, JESUS CARDOSO, hereinafter referred to as Defendant, did intentionally or knowingly fail to unreasonably provide necessary food, water, care, or shelter for an animal in defendant's custody, namely; a Turtle, to wit: Animal A093137, and the defendant's conduct was not a generally accepted and otherwise lawful form of conduct occurring solely for the purpose of or in support of fishing, hunting, or trapping; or wildlife management, wildlife or depredation control, or shooting preserve practices as regulated by state and federal law; or animal husbandry or agriculture practice involving livestock animals, then you will find the defendant guilty as charged.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, then you will find the defendant not guilty.

Counts III through X are identical to Count II, except that the animal identification number was updated to identify nine different turtles. Appellant's argument centers on Counts II through X, as no error with respect to Count I (involving the dog) is alleged.

The Court of Criminal Appeals has stated that when evaluating "nature of conduct" offenses, "a handy, though not definitive, rule of thumb is to look at the statutory verb defining the criminal act. That verb . . . is generally the criminal act upon which all jurors must unanimously agree." *Huffman v. State*, 267 S.W.3d 902, 906 (Tex. Crim. App. 2008) (quoting *Ngo*, 175 S.W.3d

at 745 n.24).  In the applicable animal cruelty statute, the verb defining the criminal act is "provide."  *See* TEX. PENAL CODE § 42.092(3).  Thus, it is the act of unreasonably failing to provide that all jurors must agree on.  *See Huffman*, 267 S.W.3d at 906.

Here, the jury charge set forth a single, specific statutory offense—cruelty to non-livestock animals, and included alternate manners and means of committing that offense—unreasonably failing to provide necessary food, water, care, or shelter.  Alternate manners and means of committing the same offense may be submitted to the jury without violating the right to a unanimous jury verdict.  *See Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004) ("The unanimity requirement is not violated by instructing the jury on alternate theories of committing the same offense . . . .").  There is no requirement that the jury designate which of the alternate manners and means of committing the specific offense they found to have been proven.  *See Landrian*, 268 S.W.3d at 535 (stating jury not required to "unanimously find the defendant committed that crime in one specific way or even with one specific act").  Accordingly, we conclude the jury charge properly included alternate means of committing a single offense and did not violate appellant's right to a unanimous jury verdict.

## CONCLUSION

We conclude the search warrant was supported by probable cause, and appellant's right to a unanimous verdict was not violated.  Therefore, we affirm the trial court's judgment.

Sandee Bryan Marion, Justice

PUBLISH