

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-14-00670-CR

Simon Rene **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR10101
Honorable Mary D. Roman, Judge Presiding

Opinion by:　Patricia O. Alvarez, Justice

Sitting:　　Rebeca C. Martinez, Justice
　　　　　　Patricia O. Alvarez, Justice
　　　　　　Luz Elena D. Chapa, Justice

Delivered and Filed:　December 9, 2015

AFFIRMED

　　　　This case stems from the murder of Samuel Wass on March 26, 2012. Appellant Simon Garcia was driving his Toyota Tundra truck on the day in question. Simon[1] stopped the vehicle near where Wass was sitting, and Simon and an unidentified third-party exited the vehicle. An argument ensued. The argument escalated and the unidentified individual shot Wass several times with a .45 Glock firearm. Simon and the unidentified individual then left in Simon's vehicle, with

---

[1] Because many of the witnesses have the same surnames, Appellant Simon Garcia is referred to as "Simon" for purposes of this appeal.

Simon in the driver's seat. Simon was ultimately indicted for Wass's murder. On August 19, 2014, a jury returned a guilty verdict pursuant to the law of parties and assessed punishment at thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

On appeal, Simon challenges the sufficiency of the evidence and the trial court's jury charge. Specifically, Simon alleges (1) the evidence was legally insufficient to support the murder conviction under either the law of parties or as a party and (2) the jury charge erroneously allowed the jury to return a verdict on different means of committing the murder and based on a theory not contained within the State's indictment.

## FACTUAL AND PROCEDURAL BACKGROUND

The State's case was tediously presented through the testimony of twenty witnesses and the admission of over fifty exhibits. Because most of Simon's appellate issues revolve around the sufficiency of the State's evidence, a more detailed version of the testimony is provided below.

### A.    Responding Officers

San Antonio Police Officer Jose Rojas responded to an emergency signal and a report of shots fired. By the time he arrived at the scene, the victim, Samuel Wass, was being attended to by emergency personnel. Officer Rojas was able to identify five witnesses: Jennifer Guzman, Bernabe Robledo Jr., Marissa Casanova, Sally Garcia, and Domingo Perales.

During the officer's attempts to identify the individuals involved in the shooting, several witnesses identified Simon as the driver of the vehicle and an unidentified individual as the passenger and shooter. Simon was described as wearing a red shirt, dark hair, medium-skin tone, and smaller than the passenger. The passenger, and the shooter, was unknown to the witnesses. The witnesses described the passenger as heavy-set with a goatee, medium complexion, and wearing a white, polo shirt with stripes. The witnesses were also able to describe the vehicle being driven by Simon as a silver-gray Toyota Tundra and to provide a license plate.

San Antonio Police Officer Faras Khalaf arrived shortly after the shooting. He observed Guzman providing medical attention to Wass. Officer Khalaf further relayed hearing Marissa Casanova scream, "It was Simon. It was Simon." Marissa did not, however, provide the officer with a last name. Finally, Officer Khalaf's investigation also supported the vehicle contained two individuals, but only the passenger was shooting.

Officer Randall Matthey, also with the San Antonio Police Department, testified the vehicle was originally identified as a silver-colored Dodge. The identification was later corrected to a silver-colored, four-door, Toyota Tundra with a matching hard cover.

## B.    The Eye-Witnesses

The State called several witnesses that either witnessed the shooting or arrived shortly thereafter.

### 1.    *Bernabe Robledo Jr.*

The State's first lay witness was Bernabe Robledo Jr. At the time of the shooting, Robledo, an insurance adjuster, was sitting in his vehicle writing an estimate for Domingo Perales. Robles testified a red Honda Civic pulled in behind him and, while the female exited the vehicle and entered the residence, the male stayed in the vehicle. Robledo testified that, shortly thereafter, a silver truck pulled up and the two individuals in the truck were arguing with the male in the Honda. Robledo described two Hispanic men exiting the truck; the shorter one from the driver's side and the bigger one from the passenger door.

As the arguing continued, Robledo saw the driver yelling at the Honda passenger. Robledo was trying to mind his own business and finish the estimate when he heard shots fired. When he looked up, Robledo identified the bigger guy as the shooter and further testified he saw a black .45 Glock in the passenger's hand. Robledo heard the shooter say something akin to, "I told you not to do that shit and I told you," before firing several more times at the victim. When the victim

"rolled out of the car," Robledo testified the passenger shot him again as the victim tried to duck behind the car towards the curb. When questioned, Robledo believed he heard a total of seven or eight gunshots.

Robledo further testified he heard the victim say, "they are shooting at me, they are shooting at me," followed by, "They shot me, they shot me." Robledo saw the driver pushing the passenger toward the truck and say, "let's go, let's go." As the two men drove off, Robledo was able to write down the license plate, make, and model of the truck.

Robledo did not know any of the individuals involved in the shooting. Although he was able to provide the officers with a description of each, when asked to identify the driver from a photo array, Robledo could only limit his identification to two of the individuals shown. Yet, during trial, over defense counsel's objection, Robledo identified Simon as "the smaller gentleman" and the driver of the silver Toyota Tundra.

2.    *Marissa Casanova*

Marissa testified Wass was her on-again, off-again boyfriend for approximately three years and the father of her youngest child. Additionally, her sister, Sally Ann, was married to Simon's brother, Albert Garcia Jr. Marissa relayed that she picked up Wass earlier in the evening in her sister's red Honda Civic and drove back to her father's house. Marissa conceded she was with Wass the evening before when Wass smoked marijuana and ingested methamphetamines. Marissa's father, Domingo Perales, did not like Wass; thus, when they arrived at the house, Wass waited in the car while Marissa went inside to get her sister, Sally Ann. Marissa further explained that she had known the Garcia family, including Albert and Simon, her entire life. They had lived down the street and grown up together.

While Marissa was in the residence, she heard five shots fired and then a "loud truck" drive away. She testified she immediately recognized the vehicle as "Simon's truck," the Toyota Tundra

she often heard speeding through the neighborhood. When she ran outside, she saw Wass walking toward her, he stumbled, and then collapsed on the ground. When she asked "who did this," Marissa testified Wass "mouthed" it was Simon.

### 3. Domingo Perales

The State also called Domingo Perales to testify. Perales had known and lived on the same street as the Garcia family for over thirty years and had known Simon since he was born. He also testified his daughter, Sally Ann, was married to Simon's brother, Albert Garcia Jr. Perales testified that he was on his doorstep, with his back to the street, when he heard the shots. When Perales moved to where he could see what happened, he saw Simon get into his Toyota Tundra and speed away. Perales further testified that he heard a second person get into the truck, but he could not see the passenger door or the other individual.

### 4. Albert Garcia Sr.

Albert Garcia Sr., Simon's father, was also called to testify. Mr. Garcia was in his residence when he heard the shots fired. As he walked out the front door, he saw Simon driving by in his Toyota Tundra truck. Mr. Garcia, the only individual that could identify the passenger, testified he only knew the passenger as "Robert." Although he did not know Robert's last name, he testified that Robert and Simon had been together earlier in the day helping with the family snow-cone business.

### 5. Jennifer Guzman

The final lay-witness was Jennifer Guzman. Guzman, a cardiac sonographer, was on her way home when she saw two men arguing. As she looked down to put her car into gear, Guzman reported hearing several gunshots. When she looked up, she saw Simon run around the driver's side of the truck, but the truck took off quickly and she could only describe a "big arm" with a black gun outside of the passenger's side.

Guzman was the first to administer first aid to Wass. She remembered asking him "who shot you" and "who were you arguing with" and Wass responding, "Simon." But when questioned, Guzman acknowledged the questions were asked in succession and Wass could have been answering either question.

**C.    Previous Exchange between Simon and Wass**

The State elicited testimony from several witnesses regarding previous altercations between Simon and Wass. The State also called two additional officers regarding a stolen vehicle in October of 2011, approximately six months before the shooting. San Antonio Police Officer Connell testified that Simon made a stolen vehicle report on a silver Toyota Tundra registered to his father, Albert Garcia Sr. Simon reported that Wass stole the vehicle for the "twenty-eight inch rims." A second officer testified the vehicle was later recovered with extensive damage to the vehicle.

Marissa also described several incidents between Wass and Garcia. One incident involved her son playing outside with Simon. When she and Wass walked up, Simon commented that Wass was not the child's father. Under rigorous questioning, Marissa conceded Wass and Simon exchanged "fighting words" and Simon "stated something about 'I'll get you one day,' or 'I'll be back to get you' or something." The State also refreshed Marissa's memory with her previous statement and Marissa was forced to acknowledge telling the officers that shortly before Christmas, approximately three months prior to the shooting, Garcia warned Wass, "Just wait, motherfucker, I'm going to get you." Marissa explained that Wass simply replied, "Whatever."

Because we assess the sufficiency of the State's evidence under a hypothetically correct jury charge, *see Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *accord Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002), we first address Simon's appellate issues regarding the trial court's charge.

**JURY CHARGE**

Simon raises two issues related to the trial court's jury charge. First, Simon argues that the trial court's inclusion of the law of parties in the court's charge, when the State's indictment did not allege murder under the law of parties, was in error. Second, Simon contends the jury instructions failed to ensure the law of parties was applied to both application paragraphs.

**A.     Indictment absent a Law of Parties Allegation**

      *1.     Argument of Simon Garcia*

Simon relies on a 2002 dissent in *Marable v. State*, 85 S.W.3d 287, 299–300 (Tex. Crim. App. 2002) (Womack, J., dissenting), to argue the State improperly alleged Simon was the principal in the indictment, but that he was criminally responsible for another in the court's jury charge. Specifically, Simon contends that, by including the law of the parties in the jury charge, the trial court effectively permitted the State to "amend" the indictment to allege an alternative means of committing the offense under the law of parties. Accordingly, he argues the indictment failed to put him on notice of the State's theory of liability under the law of parties.

      *2.     Marable v. State*

The one-paragraph *Marable* majority opinion provides "it is well-settled that the law of parties need not be pled in the indictment." *Id.* at 287–88; *accord In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013); *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Vodochodsky v. State*, 158 S.W.3d 502, 509. Appellate courts are "bound in criminal cases to follow decisions of the [majority decisions of] Court of Criminal Appeals." *Lewis v. State*, 448 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *see also Mason v. State*, 416 S.W.3d 720, 728 n.10 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("When the Court of Criminal Appeals has deliberately and unequivocally interpreted the law in a criminal matter, we

must adhere to its interpretation under the dictates of vertical stare decisis."); *White v. State*, 395 S.W.3d 828, 833 (Tex. App.—Fort Worth 2013, no pet.) (same).

  *3. Analysis*

  Here, the evidence presented at trial supported the State's theory under the law of parties. In contrast to indictments in which the State specifies the manner and means of committing an offense and must seek to amend the indictment to rely on alternative means, the Court of Criminal Appeals has long held the State's indictment need not specify its intent to rely on the law of parties in seeking conviction. *See Powell*, 194 S.W.3d at 506 ("[A] person can be convicted as a party even if the indictment does not explicitly charge him as a party."); *Vodochodsky*, 158 S.W.3d at 509 (same). The trial court, therefore, properly included the law of parties' theory in the charge— even when the indictment only alleged that Simon acted as a principal actor. *See Marable*, 85 S.W.3d at 288; *Teamer v. State*, 429 S.W.3d 164, 175 n.3 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Hayes v. State*, 265 S.W.3d 673, 678–79 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *see also Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999) ("In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties.").

  Because Simon's contention that the State erred in alleging the law of parties in its indictment is without merit, we overrule this issue on appeal.

  Simon next argues the trial court's application paragraph was in error because it failed to join each murder application paragraph with the tandem law of parties instruction.

**B. Application Paragraph**

  *1. Standard of Review*

  An appellate court reviews an alleged jury charge error via a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.

Crim. App. 2005). First, we must determine whether error occurred. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). If there is error in the charge, we must then analyze whether sufficient harm resulted from the error to require reversal. *Wooten*, 400 S.W.3d at 606; *Ngo*, 175 S.W.3d at 744.

When a defendant does not object, a constitutional jury-charge issue is not preserved. *Cosio v. State*, 353 S.W.3d 766, 776 (Tex. Crim. App. 2011); *Phillips v. State*, 193 S.W.3d 904, 913–14 (Tex. Crim. App. 2006). However, "charge error is never forfeitable by a defendant's failure to object at trial." *Cosio*, 353 S.W.3d at 776; *see also Ngo*, 175 S.W.3d at 743; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988)). Instead, a failure to object controls only the type of harm analysis that will be applied. *Cosio*, 353 S.W.3d at 776.

### 2. *Egregious Harm*

When a defendant does not object to the charge error, as is the case here, the conviction is subject to reversal on appeal only if he has suffered "egregious harm." *Almanza*, 686 S.W.2d at 171. Egregious harm is established if the record shows that the appellant has suffered such harm that the defendant's trial was not fair or impartial. *Id.*; *see Cosio*, 353 S.W.3d at 776–77. Charge error is egregiously harmful when "it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Fulcher v. State*, 274 S.W.3d 713, 716 (Tex. App.—San Antonio 2008, pet. ref'd); *see also Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio*, 353 S.W.3d at 777; *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

We consider the following factors in evaluating harm: (1) "the entire jury charge"; (2) "the state of the evidence, including the contested issues and weight of probative evidence"; (3) the parties' arguments at voir dire and at trial; and (4) all other relevant information in the record. *Almanza*, 686 S.W.2d at 171. The *Almanza* analysis is fact specific and is done on a "case-by-case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

### 3. Arguments of the Parties

Simon contends the jury instructions should have "ensured that each of the two murder application paragraphs was considered in tandem with its own law of parties charge [, and the] failure to join each separate murder application paragraph was thus error." Simon also appears to argue the State's closing argument attempted to improperly transfer the unnamed third party's intent and compounded the jury's confusion. However, in light of Simon's brief failing to raise an issue on improper jury argument, our analysis is limited to a discussion of the charge's application paragraph.

### 4. Purpose of the Application Paragraph in a Trial Court's Jury Charge

The jury charge's sole purpose "is to instruct the jurors on all of the law that is applicable to the case." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (citing *Abnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)); *see also Vogt v. State*, 421 S.W.3d 233, 238 (Tex. App.—San Antonio 2013, pet ref'd). "'Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense.'" *Vasquez*, 389 S.W.3d at 366–67 (alteration original) (quoting *Dinkins v. State*, 894 S.W.2d 726, 731 (Tex. Crim. App. 1995)).

The application paragraph authorizes the jury to act by applying "the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Id*. at 367. "Because [the application] paragraph specifies the factual circumstances

under which the jury should convict or acquit, it is the 'heart and soul' of the jury charge. *Id*. at 367.

As the Court of Criminal Appeals explained, the application paragraph must include the following:

(1)     specify "all of the conditions to be met before a conviction under such theory is authorized";

(2)     authorize "a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers"; or

(3)     "contain[ ] some logically consistent combination of such paragraphs."

*Id*. at 367 (internal citations omitted).

*5.     Application Paragraph in Garcia's Jury Charge*

The application paragraph in the trial court's jury charge read as follows:

IV.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 26th Day of March, 2012, in Bexar County, Texas, an unknown person did intentionally or knowingly cause the death of an individual, namely, Samuel Douglas Wass, by shooting Samuel Douglas Wass with a deadly weapon, namely, a firearm;

Or, if you find from the evidence beyond a reasonable doubt that on or about the 26th Day of March, 2012, in Bexar County, Texas, an unknown person, with intent to cause serious bodily injury to an individual, namely, Samuel Douglas Wass, did commit an act clearly dangerous to human life that caused the death of Samuel Douglas Wass, by shooting Samuel Douglas Wass with a deadly weapon, namely, a firearm;

And you also find beyond a reasonable doubt that the defendant, Simon Rene Garcia, acting with the intent to promote or assist in the commission of the offense of murder as defined above, did solicit, encourage, direct, aid, or attempt to aid that unknown person in the commission of the offense of murder as defined above;

Then, you will find the defendant guilty as a party of the offense of murder as charged in the indictment.

If you do not so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

### 6. Analysis

Simon contends that the State's failure to ensure that each of the two murder application paragraphs was considered in tandem, *with its own law of parties charge*, was in error because the jury was not instructed that it had to unanimously find Simon guilty as to either or both of the application paragraphs as a party. The case law is well-settled; a jury need not agree on either the manner or the means that caused the death of the individual. *See Landrian v. State*, 268 S.W.3d 532, 535–36 (Tex. Crim. App. 2008) (holding jury need not be unanimous in how the offense was carried out); *Cardoso v. State*, 438 S.W.3d 815, 822 (Tex. App.—San Antonio 2014, no pet.) (concluding alternate manner and means of committing the same offense may be submitted to the jury without violated the right to unanimous jury verdict). Here, the jury was only required to "unanimously agree that appellant caused the death of the complainant." *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012) (citing *Ngo*, 175 S.W.3d at 746). "All twelve jurors had to agree that the defendant committed [the] act." *Ngo*, 175 S.W.3d at 746; *Landrian*, 268 S.W.3d at 535–36. Here, the jurors had to agree that Simon aided and abetted a third party to commit Wass's murder. *Ngo*, 175 S.W.3d at 746; *Landrian*, 268 S.W.3d at 535–36. The jury *did not* have to agree whether the murder was committed "by shooting [Wass] with a deadly weapon" or by committing "an act clearly dangerous to human life that caused the [Wass's] death." *Ngo*, 175 S.W.3d at 746; *Landrian*, 268 S.W.3d at 535–36.

We, therefore, conclude the trial court's jury charge is not erroneous. Accordingly, we overrule Simon's issue on appeal relating to alleged error in the application paragraph of the trial court's charge.

Having overruled both of Simon's issues regarding the trial court's jury charge, we turn to Simon's appellate issues related to the sufficiency of the State's evidence.

## SUFFICIENCY OF THE EVIDENCE

### A.     Standard of Review

In reviewing the legal sufficiency of the evidence, an appellate court determines whether, viewing "all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *accord Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  We defer to the jury's assessment of the credibility of the witnesses "and the weight to be given to their testimony."  *Brooks*, 323 S.W.3d at 899; *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (reiterating appellate court's "role is not to become a thirteenth juror" and the court "may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder."); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) (stating that "the jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony" except where provided otherwise by law).  We are further limited to reasonable inferences from the evidence.  *Williams*, 235 S.W.3d at 750; *Jackson*, 443 U.S. at 319 (reiterating it is strictly the province of the jury "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  In so doing, an appellate court presumes the jury "resolved the conflicts in favor of the prosecution and therefore defer to that determination."  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Additionally, "[m]otive is a significant circumstance indicating guilt," and intent may "be inferred from circumstantial evidence such as acts, words, and the conduct of the" defendant. *Id*. at 50. The key question is whether "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *See Williams*, 235 S.W.3d at 750. Only upon a finding that the evidence is legally insufficient will this court reverse the trial court's judgment and order an acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982). This legal sufficiency standard applies equally to both direct and circumstantial evidence. *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

## B.      Murder as a Principal

Simon argues on appeal that the evidence is insufficient to convict him of murder as a principle, or more specifically, as the shooter. Contrary to Simon's contentions, the State never argued Simon was the shooter. From the beginning of opening statements, through all of the witnesses, to the end of closing argument, the only theory set forth before the jury was that Simon acted a party to the offense. We, therefore, conclude this appellate issue is without merit and overrule the same.

## C.      Murder pursuant to the Law of Parties

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). To convict Simon under the law of parties, the jury had to determine that Simon was criminally responsible for the acts of another. *See* TEX. PENAL CODE ANN. § 7.01(a) (West 2011); *see also Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). "A person is criminally responsible as a party to an offense if

the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id*. Section 7.02(a)(2) of the penal code provides that a "person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id*. § 7.02(a)(2).

Generally, the trial court may instruct the jury on the law of parties if "there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). The jury was entitled to consider the events that took place before, during, and after the commission of the crime. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); *Goff v. State*, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996). "There must be sufficient evidence of an understanding and common design to commit the offense." *Gross*, 380 S.W.3d at 186 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). "Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties." *Id*. (citing *Guevara*, 152 S.W.3d at 49). Mere presence of a person at the scene of a crime either before, during or after the offense, or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense; however, combined with other incriminating evidence it may be sufficient to sustain a conviction. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985); *accord Gross*, 380 S.W.3d at 186. Additionally, allegations that a party is guilty under the law of parties need not be specifically pled in the indictment. *Barrera v. State*, 321 S.W.3d 137, 144 n.1 (Tex. App.—San Antonio 2010, pet. ref'd).

*1.*     Gross v. State

Simon relies on *Gross v. State*, 380 S.W.3d 181 (Tex. Crim. App. 2012), for support that the evidence is insufficient to support his conviction. Gross was convicted under the law of parties

for the murder of Corkney Lee. *Id*. at 183. The testimony at trial was that Gross and Lee, who were in different cars, began arguing and Lee asked Gross to pull over. Both men exited their vehicles and continued to exchange words. *Id*. Approximately one minute later, Gross's co-defendant exited Gross's vehicle with a shotgun pointed at both Gross and Lee. Testimony further evidenced Gross yelled for his co-defendant to stop shooting. Although the gun was stored in Gross's vehicle, it did not belong to Gross. As Lee ran, Gross testified he heard shots, he panicked, and drove away with his co-defendant and the gun.

The Court of Criminal Appeals reiterated that the jury was permitted to draw reasonable inferences, but may not "draw conclusions on speculation." *Id*. at 188 (citing *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007)). The court pointed out that Lee and his passenger started the altercation, not Gross. There was no testimony that Gross knew Lee or his passenger prior to the evening of the shooting, much less evidence of any previous disagreements between the two. Additionally, the record was void of evidence suggesting Gross "continued the verbal altercation outside the vehicle in order to distract Lee and give [Gross's co-defendant] the opportunity to load the weapon unnoticed." *Id*. at 187. Although the State argued Gross and his co-defendant decided to kill Lee as they were pulling over, the record did not support such a conclusion. *Id*. The court concluded that Gross's conviction was based on mere speculation; and, therefore, the evidence did not substantiate his guilt. *Id*.

### 2. *Testimony Elicited during Simon's Trial*

Each of the eye-witnesses pointed to Simon as being the driver of the vehicle. Domingo Perales, who had known Simon his entire life, and Simon's own father, identified Simon as driving away from the scene shortly after the shooting. Robledo, the insurance adjuster who did not know any of the individuals involved, identified Simon as the driver and as the individual fighting with Wass immediately prior to the shooting. Robledo also identified Simon as telling the shooter it

was time to leave. Additionally, both Marissa and Guzman, the woman that stopped to administer first aid, reported that Wass identified Simon as the responsible person. The jury also heard testimony regarding Simon's and Wass's extensive history, including allegations that Wass had stolen Simon's truck six months before the shooting.

### 3. Analysis

The *Gross* case is clearly distinguishable. Here, Simon had known Wass for years and they had a long and acrimonious history. There were numerous altercations between the two individuals and several statements by Simon that he was "going to get [Wass] someday."

The testimony was also replete with examples of Simon's involvement in the offense. Simon drove the vehicle and stopped beside the vehicle in which Wass was sitting. Unlike *Gross*, where the victim started the altercation, Wass's vehicle was stopped; Wass elected to stop his truck, exit the truck, walk around to Wass's vehicle, and partake in a verbal altercation. Wass further identified Simon, and not the passenger, as the responsible party. Simon started the verbal altercation, and by all accounts, Simon directed the shooter when it was time to leave. Unlike Gross, Simon was not merely present at the scene of the crime and there was no evidence Simon attempted to stop the shooter or that he appeared surprised by the shooting. *Cf. Id.* at 187. Simon, not the co-defendant, had the history with Wass and Simon had the motive to harm or "get even" with Wass, and he drove the vehicle away from the scene.

The jury alone is charged with resolving conflicts in the testimony; and, as the sole judge of the witness credibility, the jury was entitled to believe or disbelieve all or part of the testimony for any witness. *Brooks*, 323 S.W.3d 899. The jury was entitled to make all reasonable inferences from the evidence that, although Simon did not pull the trigger, he "solicit[ed], encourage[ed], direct[ed], aid[ed], or attempt[ed] to aid" a third party to commit the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2). The testimony reasonably supports Simon's involvement in the

shooting—before, during, and after. *See Williams*, 235 S.W.3d at 750. Thus, viewing the evidence in the light most favorable to the verdict, we cannot say the evidence is legally insufficient to support the jury's determination that Simon acted with intent to promote or assist a third party to murder Wass. *See Vodochodsky*, 158 S.W.3d at 510.

Accordingly, Simon's appellate issue alleging insufficiency of the evidence to substantiate his guilt under the law of parties is overruled. *See Hardy*, 281 S.W.3d at 421; *Brooks*, 323 S.W.3d at 899.

## CONCLUSION

Having overruled all of Appellant Simon Garcia's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH