

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-25-00311-CR

Timothy W. **WILSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR4881
Honorable Benjamin Robertson, Judge Presiding

Opinion by:    Adrian A. Spears II, Justice

Sitting:    Lori I. Valenzuela, Justice
 Adrian A. Spears II, Justice
 H. Todd McCray, Justice

Delivered and Filed: May 27, 2026

AFFIRMED

After a bench trial, Timothy W. Wilson was found guilty of one count of aggravated robbery and was sentenced to fifty years of imprisonment. *See* TEX. PENAL CODE § 29.03. He brings two issues on appeal. First, he argues the evidence is legally insufficient to support his conviction. Second, he argues the trial court erred in denying his pretrial motion to suppress

because the surveillance videos obtained by the San Antonio Police Department in the initial investigation in the case were not produced in their entireties. We affirm.

## BACKGROUND

On November 5, 2021, Wilson and his co-defendant, Donte Wilson ("Donte"), entered Rounders but remained only a short time. At the same time, Scott Frazier's Uber left the parking lot, a white sedan was seen also leaving the parking lot in the same direction.

When the Uber driver stopped at a security gate to allow Frazier to enter the access code, the white sedan pulled in behind the Uber. Frazier exited the Uber with a black bag carrying more than $20,000 and began to enter the access code. A man then exited the white sedan, approached Frazier with a firearm drawn, and demanded the bag of money. After Frazier handed over the bag, the man returned to the passenger side of the white sedan and fled. Frazier reentered the Uber and pursued the white sedan. During the pursuit, the passenger of the white sedan fired two shots from the passenger side toward the Uber. The white sedan then began emitting smoke, and the driver of the white sedan pulled into a parking lot. Two individuals exited the white sedan and fled on foot.

While pursuing the white sedan, Frazier called for emergency assistance. Officers with the San Antonio Police Department arrived shortly thereafter and located a man, later identified as co-defendant Donte, hiding in bushes in a residential backyard. A search of Donte revealed more than $10,000 in cash and several identification cards. Donte stated that his foot was injured and asked officers whether they had "caught the other guy." Officers also recovered several additional items at the scene and from the white sedan after it was impounded, including a Rounders card bearing Wilson's name, a cell phone later linked to Wilson, several pieces of mail addressed to Wilson, and a firearm and gun case registered to Wilson's address.

Wilson was indicted for aggravated robbery. *See* TEX. PENAL CODE § 29.03. At a pretrial hearing, he orally urged a motion to suppress. At the hearing, Detective Ramos from the San Antonio Police Department testified about his retrieval of the surveillance videos from Rounders. At the conclusion of the hearing, the trial court denied the motion to suppress. At trial, Wilson reasserted his motion to suppress during the trial testimony of Rounders' manager, Scott Lopez. The trial court again denied the motion to suppress. On February 3, 2025, the trial court issued its findings of fact and conclusions of law on defendant's motions to suppress.

## SUFFICIENCY OF EVIDENCE

Wilson contends that the evidence is legally insufficient to support his conviction. According to Wilson, the evidence fails to identify him as one of the robbers. He further argues that his conviction cannot stand under the law of parties because the State did not provide any evidence of a common scheme "or even a single communication between the armed robber Donte and [Wilson]." Finally, Wilson argues that the evidence is insufficient to show the aggravated element because "no gun was used or provided to Donte by [Wilson]."

"To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence." *Gonzalez v. State*, 706 S.W.3d 404, 409 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.). The "appellate standard for reviewing the sufficiency of the evidence is based on a hypothetical rational fact finder, rather than on the actual fact finder's particular thought process." *Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015). "In jury trials and in bench trials, we view the evidence in the light most favorable to the verdict in order to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 309, 319 (1979), and *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "A conviction that is not

rationally based on the evidence violates the Due Process Clause, whether a judge or jury sits as the fact finder in the case." *Id*.

In reviewing the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict of the fact finder and determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *See Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *Gonzalez*, 706 S.W.3d at 409. Our review "includes evidence that was properly and improperly admitted." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "Direct and circumstantial evidence can be equally probative, and guilt can be established beyond a reasonable doubt solely by circumstantial evidence." *Gonzalez*, 706 S.W.3d at 409 (citing *Clayton*, 235 S.W.3d at 778). The fact finder "is the sole judge of the weight and credibility of the evidence." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). "When considering a claim of evidentiary insufficiency, we must keep in mind that a [fact finder] may choose to believe or disbelieve all, some, or none of the evidence presented." *Id*. "When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination." *Id*. at 656.

"When a defendant waives [his] right to a jury trial, as occurred here, we defer to the [trial] judge's role as the fact finder, which includes 'resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts.'" *Gonzalez*, 706 S.W.3d at 409 (quoting *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). "We consider 'whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id*. (quoting *Murray*, 457 S.W.3d at 448). "We measure the sufficiency of the evidence against 'the elements of the offense

as defined by the hypothetically correct jury charge for the case.'" *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "This standard applies equally to both jury and bench trials." *Id.*; *see also Malik*, 953 S.W.2d at 240 (explaining that the hypothetically correct jury charge standard applies "uniformly" to bench and jury trials, "whether or not the indictment is facially complete, and regardless of the specific wording of the jury charge actually given" and that this standard "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted"). "A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried." *Gonzalez*, 706 S.W.3d at 409.

A person commits aggravated robbery if he or she "uses or exhibits a deadly weapon" during the robbery. TEX. PENAL CODE ANN. § 29.03(a)(2). A person commits robbery if, while committing theft and with intent to obtain or maintain control of the property being stolen, such person (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02. Under section 7.02(a) of the Texas Penal Code, a person is criminally responsible for an offense committed by another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2).

At trial, numerous witnesses presented evidence. On November 5, 2021, Scott Lopez, the manager of Rounders Card Club, was on duty. Lopez testified that he was acquainted with Frazier. Lopez was also familiar with Wilson, who held a membership at Rounders. According to Lopez,

surveillance video showed Wilson arriving at Rounders at 3:43 a.m., which was approximately the same time Frazier departed.

Lopez testified that the video surveillance showed Wilson entering Rounders, walking to the restroom, and returning to the front desk. Lopez further testified he spoke with the manager on duty, who confirmed that Wilson left shortly after returning from the restroom. Lopez stated that Wilson remained inside Rounders for less than five minutes. The surveillance video captured Wilson exiting Rounders at 3:48:01 a.m. Lopez testified that a white sedan was parked in the Rounders parking lot at 3:48 a.m., and surveillance captured an individual on the driver's side of the white sedan at 3:48:26 a.m. Lopez further testified that a person could walk from inside Rounders to the white sedan in approximately twenty-five seconds.

According to Lopez, surveillance video captured Frazier in the parking lot at 3:43:31 a.m. being escorted by security. The video showed Frazier inside the Uber at 3:49:59 a.m., at which time the Uber exited the front parking lot toward Wurzbach Road. The white sedan was likewise captured exiting the parking lot at 3:50:20 a.m. in the same direction as the Uber.

Michael Mahnken, the Uber driver, testified he was dispatched to Rounders and picked up Frazier. Mahnken testified he stopped at a security gate to allow Frazier to enter an access code. Mahnken testified that a white sedan pulled in behind the Uber. Frazier then exited the Uber to enter the access code, carrying a black bag. According to Mahnken, a man exited the white sedan, approached Frazier with a firearm, demanded the black bag, returned to the passenger side of the white sedan, and fled.

Mahnken testified that Frazier reentered the Uber, and they pursued the white sedan. Both Mahnken and Frazier testified that, during the pursuit, the passenger in the white sedan fired two shots toward the Uber. Frazier testified that the white sedan began emitting smoke, and the driver

pulled into a parking lot. Frazier and Mahnken both testified that they pursued the white sedan until it stopped. They did not lose sight of the white sedan. According to Frazier, two individuals exited the white sedan and fled on foot. He further testified that police officers arrived shortly thereafter.

Officer Evans testified that on November 5, 2021, San Antonio police officers responded to a robbery in progress. Officer Evans testified that a man was located hiding in bushes in a nearby backyard. According to Officer Evans, the man stated that his foot was injured and requested emergency services. The man also asked whether officers had "caught the other guy." Officer Evans testified a search of the man revealed more than $10,000 in cash and identification cards. Officer Evans further testified that officers recovered a debit card and a Rounders card at the scene.

Detective Ramos testified he later processed a cell phone recovered from the scene that contained Wilson's driver's license. Detective Ramos also testified a wallet recovered from the scene contained a Rounders card bearing Wilson's name. Detective Ramos testified that, following the incident, the white sedan was impounded at Growdon Impound and multiple pieces of mail addressed to Wilson were found inside. Detective Ramos also testified a handgun was recovered at the apprehension site.

At trial, the State presented evidence of human DNA recovered from the steering wheel of the vehicle involved in the robbery. The DNA analysis did not exclude Wilson as the major contributor.

In viewing all the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to show Wilson was present in and operating the white sedan at the time of the offense. The fact finder "was entitled to consider the events that took place before, during, and after the commission of the crime." *Garcia v. State*, 486 S.W.3d 602, 612 (Tex. App.—San

Antonio 2015, pet. ref'd). "Each fact need not point directly to the guilt of the defendant, so long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties." *Id*. (quoting *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012)). Rounders' surveillance video established the timing of Wilson's arrival and departure in relation to Frazier, as well as the presence and movement of the white sedan immediately after Wilson exited the building. Witness testimony identified the white sedan as the vehicle used in the robbery and described a coordinated sequence in which an individual exited the passenger side, approached Frazier with a firearm, demanded the bag, and then reentered the vehicle before fleeing. Although no evidence directly ties Wilson to possession of the black bag, the evidence places him in connection with the vehicle used to commit the offense. Evidence recovered from the white sedan, including Wilson's identification and membership cards and mail addressed to him, links Wilson to the white sedan, and the presence of his DNA on the steering wheel supports an inference that he operated the vehicle. When considered together with the temporal proximity between Wilson's departure from Rounders and the white sedan's movements, as well as the uninterrupted sequence of events culminating in the vehicle's stop and the suspects' flight, this evidence permits a reasonable inference that Wilson was present in and operating the vehicle at the time of the offense.

From this evidence, a rational fact finder could reasonably infer that Wilson was present with Donte at or near the time of the offense, exercised control over the white sedan used in the robbery, and participated in a coordinated course of conduct before, during, and after the commission of the offense. The eyewitness account of the passenger exiting, committing the robbery, and returning to the white sedan, when considered together with the evidence tying Wilson to the vehicle itself, permits the reasonable inference that Wilson acted as the driver facilitating the commission of the offense and the immediate flight. In the aggregate, these

circumstances support the fact finder determining that Wilson and Donte had a common design to commit the aggravated robbery and that Wilson acted as the getaway driver. *See Rodriguez v. State*, 521 S.W.3d 822, 828–29 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("Courts have repeatedly upheld convictions under the law of parties when the evidence establishes that the defendant participated in the commission of the offense by driving the getaway vehicle."); s*ee also Williams v. State*, 473 S.W.3d 319, 325–27 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *see also Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985) ("This Court has sustained convictions where the evidence established that the defendant participated in the commission of the offense by driving the get-away vehicle"), *superseded by statute on other grounds as stated in Ex parte Patterson*, 969 S.W.2d 16 (Tex. Crim. App. 1998).

### MOTION TO SUPPRESS

Wilson argues the trial court erred in denying his motion to suppress because the entirety of the Rounders' surveillance videos obtained by the San Antonio Police Department during the initial investigation was not produced to the defense. According to Wilson, Officer Ramos viewed the entire video on the night in question but only saved a "chopped" video containing "snippets of the night in question that the officer found relevant to the prosecution of the case." Wilson contends that the "full video was exculpatory" and supported his "version of events—specifically, that he was not involved in the robbery." "We review a trial court's ruling on a motion to suppress under a bifurcated standard of review." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we give almost total deference to the trial court's factual determinations. *Id.* The trial court "is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *Id.* The trial court "is entitled to believe or disbelieve all or part of a witness's testimony—even if that testimony is uncontroverted—because" it is the trial court that "has the

opportunity to observe [a] witness's demeanor and appearance." *Id.* Second, we review de novo a trial court's application of law to the facts, and we will affirm a ruling that is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* at 447–48. When the trial court makes express findings of fact in a suppression hearing, we afford almost total deference to those findings as long as they are supported by the record. *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014).

Here, the trial court made the following findings:

1. After ascertaining Wilson as a potential suspect of an alleged crime, Detective Ramos began his investigation at Rounders by viewing interior and exterior video surveillance footage.

2. Lopez voluntarily consented to and allowed Detective Ramos to view surveillance footage taken on the day of the alleged incident.

3. Rounders' exterior surveillance footage was motion-sensor activated with a slight delay that triggered when movement occurred in certain zones. Because of the delay and movement-activated zones, the exterior cameras do not provide a source of continuous, uninterrupted recording.

4. Detective Ramos obtained all videos viewed at Rounders that were then material to his investigation.

5. The video surveillance footage collected by Detective Ramos and turned over to the State, and in turn to the Defendant, are an accurate representation of the video footage Detective Ramos viewed with Lopez.

6. Detective Ramos was not wearing a body camera when he went to Rounders and, therefore, no body camera footage exists.

7. Detective Ramos did not view any video that would derail his investigation into Defendant or exculpate Defendant.

8. No additional footage existed at the time of the motion to suppress hearing.

9. There is no evidence of any bad faith on the part of Detective Ramos or the State.

10. No evidence has been presented to indicate the State violated Article 39.14(h) or *Brady v. Maryland*, 373 U.S. 83 (1963), regarding the duty to disclose exculpatory, impeachment, or mitigating evidence. The record shows no violation of Article 39.14(h) or *Brady v. Maryland*, 373 U.S. 83 (1963).

11. No evidence has been presented to indicate that a timely request was made by the Defendant to the State to obtain additional video footage from Rounders.

Based on these findings, the trial court concluded that the surveillance video should not be excluded.

Wilson does not contest any of the above findings of fact by the trial court. In reviewing the evidence, we conclude the record supports the trial court's findings that no additional footage existed and that there is no evidence of bad faith on the part of Detective Ramos or the State. Under our standard of review, we must give almost total deference to the trial court's findings that are supported by the record. *Valtierra*, 310 S.W.3d at 447. Because no additional video footage existed, there could be no statutory or *Brady* violation based on a failure to produce. *See Moody v. State*, 551 S.W.3d 167, 171 (Tex. App.—Fort Worth 2017, no pet.) (holding that video recordings containing potentially useful evidence that no longer existed at the time of subpoena did not demonstrate bad faith by the State and thus did not constitute a *Brady* violation). Rather, any complaint regarding the completeness of the surveillance video bears on the weight of the evidence, not its admissibility. *See Robinson v. State*, 739 S.W.2d 795, 802 (Tex. Crim. App. 1987) (explaining that appellant's complaint of evidence not being accurate goes to weight, not admissibility, of evidence). On this record, the trial court did not err in denying the motion to suppress.

## CONCLUSION

Because we conclude the evidence is legally sufficient to support Wilson's conviction and because the trial court did not err in denying Wilson's motion to suppress, we affirm the judgment of the trial court.

Adrian A. Spears II, Justice

PUBLISH