Russell SALINAS, Appellant,

v.

STATE of Texas, Appellee.

No. 04–98–00939–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 1, 1999.

Verna Victoria Langham, New Braunfels, for Appellant.

Mary Beth Welsh, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

Russell Salinas ("Salinas") appeals the trial court's entry of judgment. In a sole point of error, he alleges that the trial court erred in denying him a fair sentencing hearing by not functioning as an impartial adjudicator. We affirm.

### BACKGROUND

Salinas entered a plea of nolo contendre to the State's charge that he caused bodily injury to Joshua Salinas, his infant son. The trial court sentenced Salinas, a repeat offender, under a plea agreement to ten years incarceration in the institutional division of the Texas Department of Criminal Justice and assessed a $1,000 fine against him. The trial court denied Salinas's motion for new trial on October 23, 1998. Salinas filed a notice of appeal on November 6, 1998. On November 10, 1998, the

trial court appended its order denying the motion for new trial with the statement, "Permission to appeal is granted." We have jurisdiction to hear Salinas's appeal because he has substantially complied with Texas Rule of Appellate Procedure 25.2(b)(3)(C). *See, e.g., Riley v. State,* 825 S.W.2d 699, 701 (Tex.Crim.App.1992); *Gomes v. State,* 9 S.W.3d 170 (Tex.App.-Houston [14th Dist.] 1999, no pet. h.) (en banc).

In a sole point of error, Salinas alleges that the trial court denied him a fair punishment hearing. Salinas contends that the trial court did not function as an impartial adjudicator and that the error was not harmless. Specifically, Salinas draws our attention to several exchanges between the court and witnesses, as well as the court and counsel. Salinas argues that these exchanges show that the court "had already made up its mind, even before testimony was presented."

The trial court's statements appear throughout the sentencing hearing:

1. Near the end of testimony of Dr. John H. Smith, a psychologist who examined Salinas:

COUNSEL: Doctor, is he a threat to society?

DR. SMITH: In my opinion ... no, he is not in any way a threat to society.

THE COURT: Let me ask you this: This man has got a conviction for injury to a child. Now he's got this one again. How can you say he's not a threat to society?

DR. SMITH: I don't believe that he [poses] an immediate threat.... I believe that—

THE COURT: You didn't answer my question. "[Poses] an immediate," he's not going to [pose] an immediate, he's in jail. I guarantee you, there's no threat there.... Back in '92, assault/injury to a child; is that right?

....

Here we've got again another child injury, no threat.

DR. SMITH: It's my opinion, Your Honor, if he were in treatment and followed through it, I believe at that point he would not be—

THE COURT: If I had wings, too, I would be an angel, you know....

....

[After testimony that Salinas should receive a probated sentence.] Do you think I should reward him for committing additional crimes?

....

Because if the records are true and he got five years before, now he goes and commits another crime, I'm telling this guy, "Hey you are doing fine. Let me cut it down to two."

I mean, I don't think it's the way it ought to work. I mean, you know, I don't care what that is, it just can't work that way. I can't be, you know, giving the guy a medal for going on and committing more crimes. It ought to be the other way around.... Maybe I need to be examined....

2. During testimony by Reverend Pat DuBois, Salinas's pastor:

COUNSEL: Pastor, ... [i]s he a threat to society?

....

REV. DUBOIS: No, not to society as a whole.

....

THE COURT: Would you consider a child society?

....

And your church is ready to support [Salinas]?

REV. DUBOIS: Yes, yes, everybody in the church.... [O]ur church is not scared [of Salinas]. We've ... got sheriffs and lawyers, so— no judges in the church.

THE COURT: You might have this one after I hear all these cases. I might come back and be a priest.

3. During Defense Counsel's statement to the court:

COUNSEL: .... Your Honor, of course, the reason the probation officer—— the PSI people probably didn't recommend [community supervision] because——

THE COURT: Don't worry about the probation officer. Worry about me. I'm the guy that will either deny it or grant it.

. . . .

I don't care about their opinion. They are entitled to it. The parole is documented. I respect them for it but I decide.

4. During Defense Counsel's Closing Argument:

THE COURT: .... Now you want me to turn my face and slap him on the wrist and tell him it's okay. Then when he goes and hurts somebody, then you are not going to come here and say, "Excuse Judge Chavarria. It was me. You-all hang me if you want to. Don't hang Judge Chavarria because I persuaded Judge Chavarria to turn this man loose."

I don't care how long you stand there, counsel. He's been to the penitentiary before for the same thing. I'm going to deny his probation. There's no way I'm going to grant . . . probation. I mean if I do and this man commits something else, are you guaranteeing me that's [sic] he's not going to commit another crime when he committed one in '92 and he's back here again for the same thing?

. . . .

I asked you a question, sir, are you guaranteeing this Court that?

. . . .

I will not stick my neck [out] so somebody can cut it off without a guarantee, sir . . . .

## DISCUSSION

### 1. Standard of Review

 We review the sentence imposed by the trial court under an abuse of discretion standard. *See Jackson v. State,* 680 S.W.2d 809, 814 (Tex.Crim.App.1984); *Huynh v. State,* 833 S.W.2d 636, 640 (Tex. App.-Houston [14th Dist.] 1992, no pet.). We note the "general rule that a penalty assessed within the range of punishment established by the legislature will not be disturbed on appeal." *Flores v. State,* 936 S.W.2d 478, 478 (Tex.App.-Eastland 1996, pet. ref'd); *Huynh,* 833 S.W.2d at 640. In the present case, the range of punishment for Salinas's offense (as a repeat offender) is 2–20 years incarceration with a fine not to exceed $10,000.00. *See* TEX. PEN.CODE § 12.33 (Vernon 1994). Salinas's punishment, ten years, is within the mid-range permitted by the legislature.

### 2. Requirement of Impartiality

 The Constitutional mandate of due process requires a neutral and detached judicial officer who will consider the full range of punishment and mitigating evidence. *See McClenan v. State,* 661 S.W.2d 108, 110 (Tex.Crim.App.1983); *cf. Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). "In the absence of a clear showing to the contrary," we presume that the trial court was neutral and detached. *Earley v. State,* 855 S.W.2d 260, 262 (Tex.App.-Corpus Christi 1993, no pet.).

In *Earley,* and the cases relied upon by the *Earley* court, the trial judges had clearly evidenced their decisions on sentencing at the outset of the hearings in question. *See, e.g., Earley,* 855 S.W.2d at 262–63 (recalling the judge's statements, "I am just upset that . . . you did a third-degree felony[;] I would rather have seen you with a first-degree, because I would

like to give you life" and concluding that the judge clearly indicated a desire to revoke probation and assess a maximum sentence before hearing evidence); *Howard v. State*, 830 S.W.2d 785, 787 (Tex.App.-San Antonio 1992, pet. ref'd) (concluding that the trial judge failed to consider the evidence and the entire range of punishment when the judge told the defendant, "The chances are very good that you'll get 99 years and a $10,000 fine" if the defendant faced the court during a subsequent motion to revoke probation).

In this case, the trial judge was obviously not pleased that the defendant, who had already been to the penitentiary for a similar offense, was now, once again, before the court for another injury to a child. At times, the court's language is harsh. But, judges are also human and allowed to be angry as long as their judgment is fair and supported by law. We find this to be the case here; the defendant did not receive community supervision as he wished, but he also did not receive the maximum sentence, or even close to it. Based upon our review of the record, we do not believe that the trial court was partial or biased before or during Salinas's sentencing hearing.

### 3. The Record Does Not Reflect Impartiality by the Trial Court

 Salinas brought forth three witnesses: Dr. John H. Smith, Reverend Pat DuBois, and Denise Salinas, his wife. He also testified on his own behalf. The trial court closely questioned Dr. Smith about his assessment that Salinas did not pose a threat to society as a whole and the effectiveness of imposing community supervision. While the court did not agree with Dr. Smith, we do not find that the mitigating evidence of Dr. Smith's testimony was totally disregarded. The trial court questioned Reverend DuBois about his assessment that Salinas did not pose a future threat to society, but did not show disregard for the Reverend's testimony. The trial court did not make any statement on the record regarding the testimony of either Denise or of Russell Salinas, except when pronouncing sentence.

The record reflects that the trial court: 1) permitted Salinas to introduce mitigating evidence, 2) considered the evidence, 3) sentenced Salinas to a term of incarceration within the parameters of the plea bargain agreement, and 4) sentenced Salinas within the parameters set by the Texas Legislature.

We conclude that the trial court did not abuse its discretion.

#### Conclusion

We affirm the trial court's entry of judgment.