

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00077-CR

Deveon Jeffrey **TAYLOR-WHITE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR11259B
Honorable Michael Keasler, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: February 25, 2026

AFFIRMED

A jury found Devon Jeffrey Taylor-White guilty of murder for his part in the fatal shooting

of Daniel Murphy, and the trial court assessed punishment at forty years in prison. In two issues,

Taylor-White complains that: (1) the evidence is insufficient to prove beyond a reasonable doubt

that he acted with intent to promote or assist in the commission of the murder, and (2) that the trial

court denied him due process by failing to consider the full range of punishment. We affirm.

# I. Background

It is undisputed that Taylor-White was present when Michael Randle shot Daniel Murphy.

At trial, Murphy's partner, Zakira Campbell, testified that she met Murphy in Georgia, where they lived at the time. There, Murphy introduced Campbell to Khalil Mohammad. Murphy and Mohammed were close and referred to each other as brothers, but they were not biologically related. Despite not being related, Murphy cared for Mohammad and provided for him, as Mohammad was unemployed. Campbell described Mohammad as a "leech" who relied on Murphy for help. Mohammad followed the couple from Georgia to San Antonio, Texas, to Seattle, Washington, and back to San Antonio. In Washington, Campbell gave birth to the daughter she shared with Murphy. Their daughter was only a few months old when they moved to San Antonio. In San Antonio, Murphy, Campbell, their daughter, and Mohammed shared a one-bedroom apartment at Midcrown apartments. Mohammad lived in the living room on an air mattress, and the family lived in the bedroom.

On September 2, 2022, Murphy and Campbell were returning to the apartment complex when Mohammed approached and asked Murphy for help. That night, Murphy and Campbell's daughter was staying with Murphy's mother in Houston. Mohammed stated that someone was trying to take something from him. Campbell witnessed Mohammed place a gun inside a bookbag that he then handed to her. Mohammed and Murphy walked away, and Campbell walked to their apartment. Later that evening, Murphy and Mohammed arrived at the apartment and told Campbell that they had gotten into a disagreement with someone but did not name the individual. Campbell asked Murphy to stay in the apartment, but he left with Mohammed to try to resolve the situation. Mohammed returned to the apartment alone, and in an aggressive demeanor, asked

Campbell to open the door. He entered the apartment, retrieved his gun from the bookbag, told Campbell that he did not know where Murphy was, and ran out the door.

A short time later, Murphy knocked on the apartment door and asked Campbell to let him in. She unlocked the door and Murphy entered the apartment, and Taylor-White and Randle rushed in behind him. Randle had a gun. Taylor-White and Randle began asking questions about Mohammed's whereabouts and where his items were located. Campbell and Murphy told the men they did not know where he was. Taylor-White was giving orders, asking questions, and became upset when Campbell and Murphy could not answer his questions. Randle ordered Campbell to lie on the ground, but Taylor-White later ordered her to stand up because she was not involved. At this point, Randle was inside of the apartment — pointing a gun at Murphy — and Taylor-White was standing in the doorframe. Taylor-White stated "[e]mpty a clip on his ass" and "[l]ight him up." Randle, while exiting the apartment, fired multiple shots at Murphy. As Randle exited the apartment, Taylor-White grabbed his arm and shut the door.

Joseph McGow, who lived at Midcrown apartments, testified that on September 2, 2022, he heard men arguing outside of his apartment. He looked out the window to see four men — one walking in front, held at gun point, being "marched" around the building, and followed by three men. McGow lost sight of the men as they walked down an alley. A few minutes later, McGow heard several gunshots.

The jury charge instructed that the jury could convict Taylor-White of murder under the law of parties. The jury found Taylor-White guilty. In a separate proceeding that concluded before Taylor-White's trial, Randle pled no contest to the murder and received twenty-five years in prison as part of a plea bargain.

**II. SUFFICIENCY OF THE EVIDENCE — PARTY LIABILITY**

In his first issue, Taylor-White argues the evidence is insufficient to have proved beyond a reasonable doubt that he acted with intent to promote or assist in the commission of the murder.

**A. Standard of Review**

In reviewing sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gutierrez v. State*, 668 S.W.3d 46, 49 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the trial evidence to the elements of the crime as defined by a hypothetically correct jury charge. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The trier of fact is the sole judge of the weight and credibility of the evidence. *Jackson*, 443 U.S. at 319. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Our role "is restricted to guarding against the rare occurrence when a fact finder does not act rationally." *Id*. (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)). We must presume the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326.

**B. Law of the Parties**

Relevant to this case, a person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE

ANN. § 19.02(b)(1) & (2).[1]  Under the law of parties, a person is criminally responsible as a party to the offense "if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN.§ 7.01(a).  A person is criminally responsible for an offense committed by the conduct of another person if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  *Id*. § 7.02(a)(2); *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). To establish an appellant's liability as a party, the State must prove illegal conduct by the primary actor and that the appellant "harbored the specific intent to promote or assist the commission of the offense."  *Rodriguez v. State*, 521 S.W.3d 822, 828 (Tex. App.— Houston [1st Dist.] 2017, no pet.).  In assessing whether the defendant acted with the requisite intent, courts may consider actions "before, during and after the commission of the offense." *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977).

## C.    Application

On appeal, Taylor-White argues the State did not prove beyond a reasonable doubt that he was a party to the murder because the evidence was insufficient to show that he intended to promote or assist the commission of the murder.  Taylor-White takes issue with Campbell's testimony that he ordered Randle to shoot Murphy.  Specifically, Taylor-White argues that his statements "light him up" and "empty a clip on his ass" could have been a threat to encourage Murphy to speak rather than an order to shoot.  He further contends the fact that he pulled Randle's arm as he was shooting shows that he did not intend for Randle to shoot.

---

[1] The murder instruction given to the jury is as follows: "Our law provides that a person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual."

To prove the intent to promote or assist element, the State must have shown that it was Taylor-White's conscious objective or desire for Randle to commit the crime. *See Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020). "[I]ntent is hardly ever provable by direct testimony, but is to be inferred from acts, words, and conduct of the party accused." *Hall v. State*, 418 S.W.2d 810, 812 (Tex. Crim. App. 1967). Whether Taylor-White possessed the intent to kill Murphy was a question of fact for the jury to determine. *See Brown v. State,* 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). The jury alone, as the sole judge of witness credibility, was entitled to believe or disbelieve all or part of Campbell's testimony. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

Campbell's testimony at trial was that Taylor-White and Randle followed Murphy into the apartment. She testified that, while Randle held Murphy at gunpoint, Taylor-White told Randle to "[e]mpty a clip on his ass" and "[l]ight him up" because Taylor-White was upset Murphy did not answer his questions. *See Hall*, 418 S.W.2d at 812 (explaining that "intent to kill may properly be inferred from the fact that the appellant committed the assault with a deadly weapon."); *see also Alphin v. State*, No. 06-11-00257-CR, 2012 WL 6060764, at *4 (Tex. App.—Texarkana Dec. 6, 2012, no pet.) (mem. op., not designated for publication) ("Intent can be inferred from such circumstantial evidence as the person's acts, words, and conduct because '[o]ne's acts are generally reliable circumstantial evidence of one's intent.'") (quoting *Laster*, 275 S.W.3d at 524). Then, as Randle shot Murphy, Taylor-White grabbed Murphy's arm as the men fled the scene. *See Garcia v. State*, 486 S.W.3d 602 (Tex. App.—San Antonio 2015, pet. ref'd) (holding that post-shooting conduct, such as defendant directing a third party when to leave and fleeing the scene, when considered alongside other evidence, is sufficient to show intent to promote or assist murder).

Viewed in the light most favorable to the jury's verdict, we cannot say the evidence was insufficient for a rational jury to find that Taylor-White intended Murphy's death. Accordingly, we hold that the evidence is legally sufficient to support the jury's verdict that Taylor-White was guilty under the law of parties. We overrule his first issue.

### III. DUE PROCESS — CONSIDERATION OF THE FULL RANGE OF PUNISHMENT

In his second issue, Taylor-White argues that the trial court deprived him of due process by failing to consider the full range of punishment.

### A. Standard of Review

A defendant has a due process right to a neutral and detached hearing body or officer. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). "A trial court denies due process where it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider mitigating evidence and imposes a predetermined punishment." *Buerger v. State*, 60 S.W.3d 358, 364 (Tex. App.— Houston [14th Dist.] 2001, pet. ref'd). "'In the absence of a clear showing to the contrary,' we presume that the trial court was neutral and detached." *Salinas v. State*, 9 S.W.3d 338, 340 (Tex. App.—San Antonio 1999, no pet.) (quoting *Earley v. State*, 855 S.W.2d 260, 262 (Tex. App.— Corpus Christi–Edinburg 1993, no pet.)).

### B. Application

At the trial, evidence was presented that Randle received a twenty-five-year sentence as part of his plea bargain. In his closing statement, Taylor-White asked for a fifteen-year sentence so that his sentence would not be "drastically out of line" with the sentence Randle received as the gunman. Before imposing sentence, the trial court explained the nature of a plea bargain and that Randle received a low sentence for the gravity of the crime. Specifically, the trial court stated:

> Plea bargains are just what they're called.  They're bargains. What happens is generally the State looks at a case, sees what it's worth, and offers something considerably less, generally anywhere from a third to a half of what the person actually deserves for the commission.  And so I don't pay too terribly much attention to plea bargains, I really don't, because that's not what he — he got considerably less.  Twenty years for a murder, an intentional, un — completely unaggravated from the victim's point of view.  And so that's a problem.

Taylor-White argues this statement "demonstrate[ed] a belief that a plea bargain describes a term of years below what a defendant deserves" and "the trial court showed it could not consider a sentence less than [twenty-five] years."

As a preliminary matter, the trial court was not required to use Randle's sentence as a ceiling for Taylor-White's sentence.  *See Evans v. State*, 656 S.W.2d 65, 67 (Tex. Crim. App. 1983) ("We do not see how the conviction and punishment of a co-defendant could mitigate appellant's culpability in the crime.  Each defendant should be judged by his own conduct and participation and by his own circumstances.").

The record reflects that the trial court heard testimony from several witnesses, considered the evidence presented, and reviewed the Presentence Investigation Report before making the complained of comments and imposing a sentence.  The comments made by the trial court do not demonstrate that it refused to consider the full range of punishment, but rather, made an "attempt to assess a sentence proportionate to the seriousness of [Taylor-White's] crime."  *See Jaenicke v. State*, 109 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).  Indeed, the trial court stated that it was "trying to do what's right under the circumstances" and was "trying to set something that's fair considering all — considering the loss."  The trial court ultimately concluded that Taylor-White's involvement in the crime, as the gunman or not, did not diminish his participation in, what he considered to be a "particularly tragic" case.

Further, the record demonstrates that the trial court did consider the full range of punishment. It imposed a 40-year sentence, which is less than the middle of the 99-year maximum punishment allowed for murder. *See Meighen v. State*, No. 11-11-00259-CR, 2012 WL 3799664, at \*1, \*4 (Tex. App.—Eastland Aug. 31, 2012, pet. ref'd) (mem. op., not designated for publication) (holding the record indicated that trial court did consider full range of punishment where it imposed a five-year sentence, because the sentence was in the middle of the punishment range for a third-degree felony); *Gonzalez v. State*, No. 01-14-00861-CR, 2015 WL 9310903, at \*2 (Tex. App.—Houston [1st Dist.] Dec. 22, 2015, no pet.) (mem. op., not designated for publication) (noting record indicated that trial court considered full range of punishment where it imposed a 16-year sentence, because it was less than 99-year maximum punishment and 25-year punishment sought by State).

Accordingly, absent a clear showing to the contrary, we must presume that the trial court considered the full range of punishment. *See Brumit*, 206 S.W.3d at 645. We overrule Taylor-White's second issue.

### III. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH